UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAMON MORENO,                          )    No. EDCV 08-0657-RC
                                       )
          Plaintiff,                   )
                                       )    OPINION AND ORDER
     v.                                )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
          Defendant.                   )
_____)

     Plaintiff Ramon Moreno filed a complaint on May 22, 2008, seeking
review of the Commissioner's decision denying his application for
disability benefits, and on October 20, 2008, the Commissioner
answered the complaint.  The parties filed a joint stipulation on
December 9, 2008.


                            **BACKGROUND**

                                **I**

     On October 4, 2005 (protective filing date), plaintiff applied
for disability benefits under the Supplemental Security Income program
of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to

work since December 7, 2004.  Certified Administrative Record ("A.R.")
13, 66-77.  The plaintiff's application was initially denied on
January 6, 2006, and was denied again on February 7, 2006, following
reconsideration.  A.R. 37-41, 44-50.  The plaintiff then requested an
administrative hearing, which was held before Administrative Law Judge
Mason D. Harrell, Jr. ("the ALJ") on April 24, 2007.  A.R. 52, 288-
311.  On May 9, 2007, the ALJ issued a decision finding plaintiff is
not disabled.  A.R. 201-12.  The plaintiff appealed the decision to
the Appeals Council, which remanded the matter to the ALJ for further
proceedings.  A.R. 213-19.

     On December 5, 2007, following remand, the ALJ held a new
administrative hearing, A.R. 269-87, and on January 11, 2008, the ALJ
issued a decision again finding plaintiff is not disabled.  A.R. 10-
24.  The plaintiff appealed this decision to the Appeals Council,
which denied review on April 25, 2008.  A.R. 6-9.

                                    II
     The plaintiff, who was born on July 31, 1959, is currently 50
years old.  A.R. 67, 69, 73.  He has an eleventh-grade education, and
has previously worked as a truck driver, delivery driver, security
supervisor and security guard.  A.R. 82-89, 294.

     Since October 31, 2004, plaintiff has received medical treatment
at Loma Linda University Medical Center ("Loma Linda"), where he has
been diagnosed with cervical and lumbar degenerative disc disease,
asthma, bronchitis, diabetes mellitus and hypertension, among other
conditions.  A.R. 111-49, 176-200, 235-64.  On December 15, 2004,

plaintiff had cervical and lumbar spine x-rays, which revealed mild

degenerative disc disease at C5-C6, with a suggestion of mild neural

foraminal narrowing on the right and mild-to-moderate disc space

narrowing, with endplate sclerosis; mild anterior hypertrophic

spurring at L4-L5 and L5-S1, worse at the lumbosacral junction; and

mild associated sclerosis of the facet joints at L4-L5 and L5-S1.

A.R. 108-09, 147-48.  On February 3, 2005, plaintiff had a lumbar

spine MRI, which revealed: mild right lateral recess stenosis[1]

secondary to a 4-mm. right (greater than left) posterior disc bulge at

L5-S1, with potential for impingement on the traversing right S1

nerve; mild-to-moderate right L5-S1 foraminal encroachment, with

potential for impingement on the exiting right L5 nerve; 2-mm.

posterior disc bulges at L2-L3 and L3-L4, without evidence of neural

impingement; and mild-to-moderate degenerative disc disease at L4-L5,

with a 2.5-mm. posterior disc bulge without evidence of neural

impingement.  A.R. 105-06.  On April 19, 2006, plaintiff underwent

electromyographic studies of both arms, which demonstrated bilateral

moderate median neuropathy[2] at the wrist (carpal tunnel syndrome),

slightly worse on the more symptomatic right side.  A.R. 262-63.

//

---

[1]  Spinal stenosis is "narrowing of the vertebral canal,
nerve root canals, or intervertebral foramina of the lumbar spine
caused by encroachment of the bone upon the space; symptoms are
caused by compression of the cauda equina and include pain,
paresthesias, and neurogenic claudication."  Dorland's
Illustrated Medical Dictionary, 1698 (29th ed. 2000).

[2]  Neuropathy is "a functional disturbance or pathological
change in the peripheral nervous system, sometimes limited to
noninflammatory lesions as opposed to those of neuritis; the
etiology may be known or unknown."  Dorland's Illustrated Medical
Dictionary at 1212.

On May 2, 2006, a Loma Linda physician, Dr. Danielle Sawyer-
Macknet, noting plaintiff has stenosis at L5-S1, as documented by an
MRI, and a history of a work-related head injury, which could account
for his memory issues, A.R. 171, opined plaintiff: is able to
occasionally lift and carry less than 10 pounds; can sit, stand and
walk for less than 2 hours in an 8-hour day; can sit or stand for 5
minutes before changing position; needs to be able to shift positions
at will from sitting to standing/walking, and will need to lie down 3-
4 times during a work shift; can occasionally twist, stoop, crouch and
climb stairs, and never climb ladders; and he might have problems
fingering and feeling due to carpal tunnel syndrome and diabetic
neuropathy.  A.R. 170-72.  Dr. Sawyer-Macknet also opined plaintiff is
"moderately" limited in his ability to understand and remember very
short and simple instructions; is "slightly" limited in his ability to
remember locations and work-like procedures, maintain attention and
concentration for extended periods, perform activities within a
schedule, maintain regular attendance, be punctual within customary
tolerances, sustain an ordinary routine without special supervision,
and work in coordination with or proximity to others without being
distracted by them; and is otherwise not significantly limited.  A.R.
265-66.  Finally, Dr. Sawyer-Macknet opined plaintiff would miss three
or more work days per month due to his condition.  A.R. 172, 266.

On August 29, 2006, another Loma Linda physician, Dr. David Ham,
opined plaintiff: is able to occasionally lift and carry less than 10
pounds; can stand and walk for about 2 hours and sit for about 5 hours
in an 8-hour day; can sit for 30 minutes and stand for 10 minutes
before changing position; must walk every 30 minutes for 0-5 minutes;

needs to be able to shift positions at will from sitting to standing/walking; can occasionally crouch, and never twist, stoop, or climb stairs or ladders; should avoid all exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, etc., and hazards; and might have problems reaching, handling, fingering, feeling, and pushing/pulling.  A.R. 173-75.  Dr. Ham also opined plaintiff is "moderately" limited in his ability to sustain an ordinary work routine without supervision; "slightly" limited in his ability to remember locations and work-like procedures and work in coordination with or in proximity to others without being distracted by them; and is otherwise not significantly limited.  A.R. 267-68.  Finally, Dr. Ham opined plaintiff would miss three or more work days per month due to his condition.  A.R. 175, 268.

On December 5, 2005, Thomas R. Dorsey, M.D., an orthopedic surgeon, examined plaintiff, found there was no evidence plaintiff had radiculopathy,[3] and opined plaintiff can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, occasionally bend or stoop, and stand and walk for 6 hours in an 8-hour day.  A.R. 150-55.

Medical expert Samuel Landau, M.D., testified at the 2007 administrative hearing, opining that plaintiff has obesity, low back pain, neck and low back degenerative disc disease, asthmatic bronchitis, type II diabetes mellitus, and carpal tunnel syndrome in both wrists, none of which meet or in combination equal a listed impairment.  A.R. 272-78.  Dr. Landau further opined plaintiff: should

---

[3]  Radiculopathy is "disease of the nerve roots."  Dorland's Illustrated Medical Dictionary at 1511.

1   be limited to lifting and/or carrying up to 10 pounds frequently and

2   20 pounds occasionally; can occasionally bend and stoop; can perform

3   occasional neck motions, but should avoid extremes of motions; should

4   hold his head in a comfortable position most of the time; can sit for

5   six hours with normal breaks every two hours, and stand and/or walk

6   for two hours out of 8 hours; should be able to use a cane as needed

7   for walking; can climb stairs, but not climb ladders, work at heights,

8   or balance; can maintain a fixed step position for 15-30 minutes and

9   then climb occasionally; needs an air conditioned work environment

10  free from excessive inhaled pollutants; and cannot do forceful

11  gripping, grasping and twisting or continuous fine or gross

12  manipulation, but can do frequent fine or gross manipulation.  A.R.

13  275-76, 285.

14

15                              **DISCUSSION**

16                                 **III**

17      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

18  review the decision denying plaintiff disability benefits to determine

19  if his findings are supported by substantial evidence and whether the

20  Commissioner used the proper legal standards in reaching his decision.

21  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v.

22  Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

23

24      The claimant is "disabled" for the purpose of receiving benefits

25  under the Act if he is unable to engage in any substantial gainful

26  activity due to an impairment which has lasted, or is expected to

27  last, for a continuous period of at least twelve months.  42 U.S.C. §

28  1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

burden of establishing a prima facie case of disability." <u>Roberts v.</u>
<u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1122
(1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).


        The Commissioner has promulgated regulations establishing a five-
step sequential evaluation process for the ALJ to follow in a
disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
**Second Step**, the ALJ must determine whether the claimant has a severe
impairment or combination of impairments significantly limiting him
from performing basic work activities.  20 C.F.R. § 416.920(c).  If
so, in the **Third Step**, the ALJ must determine whether the claimant has
an impairment or combination of impairments that meets or equals the
requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has
sufficient residual functional capacity despite the impairment or
various limitations to perform his past work.  20 C.F.R. § 416.920(f).
If not, in **Step Five**, the burden shifts to the Commissioner to show
the claimant can perform other work that exists in significant numbers
in the national economy.[4]  20 C.F.R. § 416.920(g).
//

---

        [4]  Moreover, where there is evidence of a mental impairment
that may prevent a claimant from working, the Commissioner has
supplemented the five-step sequential evaluation process with
additional regulations addressing mental impairments.  <u>Maier v.</u>
<u>Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998)
(per curiam); <u>see</u> <u>also</u> 20 C.F.R. § 416.920a.

1    Applying the five-step sequential evaluation process, the ALJ

2    found plaintiff has not engaged in substantial gainful activity since

3    his application date of October 4, 2005. (Step One). The ALJ then

4    found plaintiff has the severe impairments of: obesity with low back

5    pain; degenerative disc disease of the neck and low back; asthmatic

6    bronchitis; diabetes mellitus, type-2; and carpal tunnel syndrome;

7    however, plaintiff does not have a severe mental impairment. (Step

8    Two). The ALJ also found plaintiff does not have a combination of

9    impairments that meets or equals a Listing. (Step Three). The ALJ

10   next determined plaintiff cannot perform his past relevant work.

11   (Step Four). Finally, the ALJ concluded plaintiff can perform a

12   significant number of jobs in the national economy; therefore, he is

13   not disabled. (Step Five).

14

15                                    IV

16   The Step Two inquiry is "a de minimis screening device to dispose

17   of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart,

18   433 F.3d 683, 687 (9th Cir. 2005). Including a severity requirement

19   at Step Two of the sequential evaluation process "increases the

20   efficiency and reliability of the evaluation process by identifying at

21   an early stage those claimants whose medical impairments are so slight

22   that it is unlikely they would be found to be disabled even if their

23   age, education, and experience were taken into account." Bowen v.

24   Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119

25   (1987). However, an overly stringent application of the severity

26   requirement violates the Act by denying benefits to claimants who meet

27   the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943,

28   949 (9th Cir. 1994).

1    A severe impairment exists when there is more than a minimal

2  effect on an individual's ability to do basic work activities.   <u>Webb</u>,

3  433 F.3d at 686; <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir.

4  2001); <u>see also</u> 20 C.F.R. § 416.921(a) ("An impairment or combination

5  of impairments is not severe if it does not significantly limit [a

6  person's] physical or mental ability to do basic work activities.").

7  Basic work activities are "the abilities and aptitudes necessary to do

8  most jobs," including physical functions such as walking, standing,

9  sitting, lifting, pushing, pulling, reaching, carrying or handling, as

10  well as the capacity for seeing, hearing and speaking, understanding,

11  carrying out, and remembering simple instructions, use of judgment,

12  responding appropriately to supervision, co-workers and usual work

13  situations, and dealing with changes in a routine work setting.

14  20 C.F.R. § 416.921(b); <u>Webb</u>, 433 F.3d at 686.

15

16    In Step Two, the ALJ found plaintiff does not have a severe

17  mental impairment.   A.R. 16.   However, plaintiff contends this finding

18  is not supported by substantial evidence because the ALJ failed to

19  properly consider the opinions of his treating physician, Dr. Sawyer-

20  Macknet.   There is no merit to this claim.

21

22    Since the medical opinions of a treating physician is entitled to

23  special weight because a treating physician is "employed to cure and

24  has a greater opportunity to know and observe the patient as an

25  individual[,]" <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987);

26  <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir.

27  1999), the ALJ must provide "clear and convincing" reasons for

28  rejecting the uncontroverted opinion of a treating physician, <u>Ryan v.</u>

1    Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick v.

2    Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a] treating

3    doctor's opinion is contradicted by another doctor, the ALJ may not

4    reject this opinion without providing 'specific and legitimate

5    reasons' supported by substantial evidence in the record."  Reddick,

6    157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.

7    2008).

8

9        With respect to plaintiff's mental health, Dr. Sawyer-Macknet

10   opined plaintiff: is "moderately" limited in his ability to understand

11   and remember very short and simple instructions; is "slightly" limited

12   in his ability to remember locations and work-like procedures,

13   maintain attention and concentration for extended periods, perform

14   activities within a schedule, maintain regular attendance, and be

15   punctual within customary tolerances, sustain an ordinary routine

16   without special supervision, and work in coordination with or

17   proximity to others without being distracted by them; is otherwise not

18   significantly limited; and would miss three or more work days per

19   month due to his condition.  A.R. 265-66.  The ALJ rejected Dr.

20   Sawyer-Macknet's opinions because they were "inconsistent with the

21   medical evidence as a whole and . . . unsupported by medically

22   acceptable clinical or diagnostic findings."  A.R. 22.  The ALJ's

23   reasoning is well-founded and supported by substantial evidence in the

24   record.  Although plaintiff has been prescribed Elavil, see, e.g.,

25   A.R. 257, 304, he testified at the administrative hearing that Elavil

26   was prescribed to him for pain.[5]  A.R. 279.  Nothing else in the

27   _____

28        [5]  Among other uses, Elavil is used "to control chronic pain
     [and] to prevent migraine headaches. . . ."  The PDR Family Guide

10

1   record indicates plaintiff has been diagnosed with a mental

2   impairment.   Thus, the ALJ properly discredited Dr. Sawyer-Macknet's

3   opinions as "conclusory, brief, and unsupported by the record as a

4   whole, or by objective medical findings."   Batson v. Comm'r of the

5   Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citation

6   omitted); Bray v. Astrue, 554 F.3d 1219, 1228 (9th Cir. 2009).

7

8          The ALJ also rejected Dr. Sawyer-Macknet's opinions about

9   plaintiff's mental health because they were on a check-the-box form

10  that "does not provide detailed analysis of [plaintiff's] condition

11  and his diagnosis. . . ."  A.R. 22.   This too is a proper rationale

12  for the ALJ to reject Dr. Sawyer-Macknet's opinions.[6]   See, e.g.,

13  Batson, 359 F.3d at 1195 (ALJ properly rejected treating physicians'

14  opinions in part because they were in checklist form with no

15  _____

16  to Prescription Drugs, 240 (8th ed. 2000).

17       [6]  The ALJ, however, improperly rejected Dr. Sawyer-
    Macknet's opinions about plaintiff's mental health because "there
18  is no evidence to show Dr. Sawyer-Macknet has any particular
    qualifications, training, or expertise relative to psychological
19  or psychiatric impairments enabling her to make such an
    assessment."  A.R. 22.   Under the Act, any physician "is
20  qualified to give a medical opinion as to [a claimant's] mental
    state . . . even though . . . not a psychiatrist."  Sprague, 812
21  F.2d at 1232; see also Lester v. Chater, 81 F.3d 821, 833 (9th
    Cir. 1995) ("Dr. Kho provided treatment for the claimant's
22  psychiatric impairment, including the prescription of
    psychotropic medication.  His opinion constitutes 'competent
23  psychiatric evidence' and may not be discredited on the ground
    that he is not a board certified psychiatrist.").   Nevertheless,
24  given the other well-supported reasons for the ALJ rejecting Dr.
    Sawyer-Macknet's opinions about plaintiff's mental health, as
25  discussed herein, any error in this regard is harmless, Burch v.
    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005), and the ALJ was not
26  required to further develop the record regarding Dr. Sawyer-
    Macknet's credentials, as plaintiff contends.
27

28

1  supporting objective evidence); <u>Crane v. Shalala</u>, 76 F.3d 251, 253

2  (9th Cir. 1996) (ALJ properly rejected psychological evaluations

3  "because they were check-off reports that did not contain any

4  explanation of the bases of their conclusions."). Thus, "the ALJ

5  provided 'specific and legitimate' reasons based on substantial

6  evidence" for rejecting Dr. Sawyer-Macknet's opinions about

7  plaintiff's mental health.  <u>Tommasetti</u>, 533 F.3d at 1037.

8

9                                 **V**

10      A claimant's residual functional capacity ("RFC") is what he can

11  still do despite his physical, mental, nonexertional, and other

12  limitations.  <u>Mayes</u>, 276 F.3d at 460; <u>Cooper v. Sullivan</u>, 880 F.2d

13  1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the

14  RFC to perform limited light work,[7] as follows:

15

16      [W]ithin an eight hour workday he can stand and/or walk for

17      two hours, sit for six hours with normal breaks such as

18      every 2 hours, and use a cane as needed.  He can lift and/or

19      carry 10 lbs. frequently and 20 lbs. occasionally, and

20      occasionally stoop and bend.  He can climb stairs, but he

21      cannot climb ladders, work at heights, or balance.  His work

22      environment should be air-conditioned and free of excessive

23

24      [7] Under Social Security regulations, "[l]ight work involves
    lifting no more than 20 pounds at a time with frequent lifting or
25  carrying of objects weighing up to 10 pounds.  Even though the
    weight lifted may be very little, a job is in this category when
26  it requires a good deal of walking or standing, or when it
    involves sitting most of the time with some pushing and pulling
27  of arm or leg controls.  To be considered capable of performing a
    full or wide range of light work, you must have the ability to do
28  substantially all of these activities."  20 C.F.R. § 416.967(b).

1  inhaled pollutants, such as an office or th[e] [ALJ's]
2  hearing room.  He can do occasional neck motion but should
3  avoid extremes of motion.  His head should be held in a
4  comfortable position most of the time.  He can maintain a
5  fixed head position for 15-30 minutes at a time[]
6  occasionally and work without forceful gripping, grasping,
7  or twisting and no continuous fine and gross manipulations,
8  but can do so frequently.  He can perform simple repetitive
9  tasks due to medications.

10

11  A.R. 17.  However, plaintiff contends the RFC determination, and
12  resultant Step 5 denial of benefits, are not supported by substantial
13  evidence because, among other reasons, the ALJ improperly found he was
14  not a credible witness.  The plaintiff is correct.

15

16      The plaintiff testified at the administrative hearing that he has
17  headaches, neck, lower back and leg pain, his legs give out, and he
18  has carpal tunnel syndrome.  A.R. 280-82, 292, 295-96, 298.  He stated
19  he can only lie around the house because of his pain, his pain makes
20  it difficult for him to concentrate, and he gets disoriented, tired
21  and forgetful when he takes his medication.  A.R. 279-81, 283, 292,
22  295, 298, 303-04.  After he takes his medication in the morning,
23  plaintiff stated he naps, sometimes sleeping four hours.  A.R. 283,
24  295-96.  Further, plaintiff testified that, as a result of his carpal
25  tunnel syndrome, he cannot hold heavy items or grab things too hard
26  because his hands start hurting and go numb, and he sometimes drops
27  cereal bowls because of the numbness.  A.R. 282, 296.  The plaintiff
28  was prescribed a cane to help him walk because his legs give out, but

1  he does not do much walking because of his pain.  A.R. 280, 296, 306.

2

3       Once a claimant has presented objective evidence he suffers from

4  an impairment that could cause pain or other nonexertional

5  limitations,[8] the ALJ "'must provide specific, cogent reasons'" if he

6  finds the claimant's subjective complaints are not credible.  <u>Greger</u>

7  <u>v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted);

8  <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007).  Furthermore, when

9  the medical evidence establishes an objective basis for some degree of

10  pain and related symptoms, and no evidence affirmatively suggests the

11  claimant is malingering, the ALJ's reasons for rejecting the

12  claimant's testimony must be "clear and convincing."  <u>Morgan</u>, 169 F.3d

13  at 599; <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1160

14  (9th Cir. 2008).

15

16       Here, the ALJ found plaintiff's testimony was not credible for

17  several reasons: (1) the claimant makes "excessive exaggeration and

18  inconsistent statements"; (2) the claimant's "inconsistent [testimony]

19  with his prior testimony" about medications"; (3) the claimant "is

20  able to work" since he has "look[ed] for work"; (4) the claimant's

21  "failure to follow his treatment plan relative to the treatment of his

22  diabetes mellitus and obesity"; and (5) the "[o]bjective medical

23  evidence does not fully support the claimant's complaints."  A.R. 19-

24  21.

25  _____

26       [8]  "While most cases discuss excess pain testimony rather
    than excess symptom testimony, rules developed to assure proper
27  consideration of excess pain apply equally to other medically
    related symptoms."  <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687-88
28  (9th Cir. 1989).

1    The ALJ found plaintiff was not entirely credible "due to
2   excessive exaggeration and inconsistent statements" when he "was asked
3   about his response to a questionnaire where he stated he changes
4   sitting position after sitting a while.  However, during the course of
5   the hearing he was observed changing position for the first time after
6   45 minutes had passed, evidencing an inconsistency between his
7   testimony and his behavior."  A.R. 20.  Yet, "[t]he fact that a
8   claimant does not exhibit physical manifestations of prolonged pain at
9   the hearing provides little, if any, support for the ALJ's ultimate
10   conclusion that the claimant is not disabled or that his allegations
11   of constant pain are not credible."  Gallant v. Heckler,
12   753 F.2d 1450, 1455 (9th Cir. 1984); see also Perminter v. Heckler,
13   765 F.2d 870, 872 (9th Cir. 1985) (per curiam) (condemning ALJ's
14   personal observations as "sit and squirm" jurisprudence and noting
15   inapplicability where contrary evidence).

16

17    Additionally, the ALJ found plaintiff was not credible based on:

18

19    . . . the fact that during the April 24, 2007 hearing, the
20    [plaintiff] said he was testifying slowly because his
21    medications make him confused.  This statement is
22    inconsistent with his prior testimony that he had taken less
23    medication that morning so that he would be alert.  Based on
24    his testimony on April 24, 2007, it also appears that the
25    [plaintiff] may be adjusting to his medications now and may
26    not be so sleepy in the future after he has adequately
27    adjusted.

28   //

15

A.R. 20.  At the administrative hearing, plaintiff testified he "only took a little bit" of his medication that morning, and he would take the rest of the medication after the hearing, because the medication makes him disoriented and exhausted and he cannot concentrate.  A.R. 292, 295-96, 298, 303-04.  Later, plaintiff apologized to the ALJ, stating "you have to forgive me, Your Honor, because the medication, it makes me a little disoriented, so I've got to try to get my thoughts together when you ask me questions, so I apologize if I go slow or kind of look disoriented to you."  A.R. 306-07.  There is simply no inconsistency between the plaintiff's two statements; therefore, this supposed "inconsistency" is not a proper reason for finding plaintiff was not credible.  Moreover, the ALJ's conclusion that plaintiff "may be adjusting to his medications" is rank speculation and is improper.  An "'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . [,]'" Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citations omitted), and he "must not succumb to the temptation to play doctor and make [his] own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

    Further, the ALJ found plaintiff's credibility was "undermined" by his:

        failure to follow his treatment plan relative to the
        treatment of his diabetes mellitus and obesity.  Medical
        records show his treating physician instructed him to avoid
        sugars and starches due to his diabetes mellitus (Exhibit
        10F, p. 22).  Furthermore, he testified his doctor told him

1    to lose weight relative to his back condition and diabetes.
2    However, the claimant's medical records . . . do not reflect
3    an adherence to a diet free of sugar and starches, but
4    rather, his escalating weight gain since his alleged onset
5    date.  Specifically, in January 2005, he weighed 218 lbs.
6    By December 2005, he weighed 226 lbs. with a body mass index
7    score of 38.  By November 2006 he weighed 237 lbs.  The
8    claimant testified that he recently went on a diet, and
9    touted that he has lost two pounds, a minuscule amount when
10   compared to the amount of weight he has gained.

12   A.R. 21 (some citations omitted).  However, this determination also is
13   not supported by substantial evidence, or even the exhibit the ALJ
14   cites.  That exhibit is dated November 8, 2006, A.R. 197, and it
15   appears to be the **first** date plaintiff was advised to avoid sugars and
16   starches due to his diabetes.  See also A.R. 178 (3/7/07), 240
17   (3/7/07).  Thus, the ALJ's reliance on plaintiff's weight gain to
18   support the determination that plaintiff ignored his doctor's advice
19   of November 8, 2006, is not supported by substantial evidence.
20   Rather, plaintiff's weight on November 8, 2006, was the reason
21   plaintiff's doctor advised him to avoid sugars and starches, and the
22   record demonstrates that by the administrative hearing five months
23   later, plaintiff had lost approximately nine pounds.  A.R. 261.  Since
24   the ALJ's reason for disbelieving plaintiff is not supported by the
25   record, once again, it is not a "clear and convincing" reason for
26   finding plaintiff was not credible.
27   //
28   //

1   The ALJ also found plaintiff was not credible because he:

2

3   . . . initially testified that he did not look for work.

4   However, upon being advised that the unemployment benefits

5   compensation system requires that he look for work, he then

6   changed his testimony and admitted that his wife took him

7   around looking for work.  Such an admission is evidence that

8   he averred that he is able to work.

9

10  A.R. 20-21.  The record, however, does not clearly show whether

11  plaintiff sought unemployment benefits **after** the time of his alleged

12  disability, <u>see</u> A.R. 296-98, and the ALJ did not cite anything in the

13  record to show plaintiff represented he was capable of performing

14  full-time work **after** his disability onset date.  Therefore, this too

15  is not a clear and convincing reason for finding plaintiff was not

16  credible.  <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161-62 ("[W]hile receipt of

17  unemployment benefits can undermine a claimant's alleged inability to

18  work fulltime, the record here does not establish whether [the

19  claimant] held himself out as available for full-time or part-time

20  work.  Only the former is inconsistent with his disability

21  allegations.  Thus, such basis for the ALJ's credibility finding is

22  not supported by substantial evidence." (citations omitted)).

23

24      Finally, it is well-established law that the ALJ may not

25  discredit a claimant's testimony "solely because the degree of pain

26  alleged by the claimant is not supported by objective medical

27  evidence."  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347 (9th Cir. 1991) (en

28  banc); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).  Thus,

this "is not a clear and convincing reason" for rejecting plaintiff's credibility. <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001); <u>see also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to discredit . . . testimony solely on the ground that it is not fully corroborated by objective medical findings.").

    For all these reasons, the ALJ provided "nothing but unsatisfactory reasons for discounting [plaintiff's] credibility," <u>Reddick</u>, 157 F.3d at 724; thus, "substantial evidence does not support the [ALJ's RFC] assessment." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th Cir. 2007). "Nor does substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment." <u>Id.</u> at 1041.

                                    **VI**

    When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000). Here, since there are "insufficient findings as to whether [plaintiff's] testimony should be credited as true," remand is the

//

//

1    appropriate remedy.  <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir.

2    2003).[9]

3

4                                          **ORDER**

5       IT IS ORDERED that: (1) plaintiff's request for relief is

6    granted; and (2) the Commissioner's decision is reversed, and the

7    action is remanded to the Social Security Administration for further

8    proceedings consistent with this Opinion and Order, pursuant to

9    sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

10    accordingly.

11

12    DATE: <u>  August 26, 2009     </u>       <u>  /S/  ROSALYN M. CHAPMAN        </u>

13                                              ROSALYN M. CHAPMAN
                              UNITED STATES MAGISTRATE JUDGE

14    R&R-MDO\08-0657.mdo
     8/26/09

15

16

17

18

19

20

21

22

23

24

25

26

27        [9]  Having reached this conclusion, it is unnecessary for the
     Court to address the other claims plaintiff raises, none of which

28    warrant any further relief than granted herein.